```
                  UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                         Docket #23cv1042
 NOCK, ROBERT,                       :

                    Plaintiff,       :

   - against -                       :

 SPRING ENERGY RRH, LLC, et al.,     : New York, New York
                                       July 20, 2023
                    Defendants.      :

------------------------------------ :
```

                        PROCEEDINGS BEFORE
                THE HONORABLE ROBERT W. LEHRBURGER,
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          WILSON LAW TX
                        BY:  JEREMY R. WILSON, ESQ.
                        1516 Tavistock Road, 75126
                        Forney, Texas 75202

For Defendants:         HARRIS BEACH PLLC
                        BY:  ELLIOT HALLAK, ESQ.
                        677 Broadway, Suite 1101
                        Albany, New York 12207




Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings conducted by video conference and recorded by
electronic sound recording;
Transcript produced by transcription service

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

```
1                        PROCEEDINGS                    3

2            THE COURT:  All right, I've started the

3   recording, and we are here for Nock v. Spring Energy

4   RRH, LLC, and others, 23cv1042, for a discovery

5   conference.  Counsel, please put in your appearances

6   staring with plaintiff.

7            MR. JEREMY WILSON:  Thank you, Your Honor,

8   Jeremy Wilson, here on behalf of plaintiff, Robert Nock.

9            THE COURT:  The defense.

10           MR. ELLIOT HALLAK:  Good morning, Your Honor,

11  this is Elliot Hallak from the law firm of Harris Beach.

12  I represent all three defendants in this matter, Spring

13  Energy RRH, LLC; RRH Energy Services, LLC; and Richmond

14  Road Holdings, LLC.  And also with me today is my summer

15  clerk, Elysa Maldonado.  She'll just be observing today.

16           THE COURT:  All right, terrific.  As I

17  understand it, there are two issues that I need to

18  resolve.  One is regarding the protective order issue

19  and the defendants' concern of how information produced

20  might be used in relation to contacting consumers or

21  customers.  And then the second issue is regarding the

22  subpoena served on Baltimore Gas & Electric.

23           And I actually want to start with the subpoena,

24  and – also I want to understand from plaintiff if I

25  understand something correctly.  So let me start there,
```

1                          PROCEEDINGS                    4

2   which is if I understand what you've said in your

3   letter, your theory of the case at this point is that

4   the, there were vendors who went door to door during

5   COVID, couldn't do that, and so ended up making calls.

6   And that would be the explanation for why at least it

7   seems there are no other telemarketing (indiscernible)

8   that the defendants have been able to confirm.  Do I

9   have that right?

10              MR. WILSON:  Yes, Your Honor, that's, yes,

11  that's correct.

12              THE COURT:  And what information do you have

13  that anyone other than Mr. Nock was contacted in that

14  fashion?

15              MR. WILSON:  Your Honor, we have information

16  that indicates that they were making these similar calls

17  to other, to the class members in addition to Mr. Nock.

18              THE COURT:  Well, what is that information?

19  Because right now you're, as I understand it, you're

20  speculating that people went door to door but because of

21  COVID ended up making calls.

22              MR. WILSON:  Yes.

23              THE COURT:  And so do you have anything to

24  substantiate that other than Mr. Nock saying that he

25  received a call?  In other words, I'm very concerned

PROCEEDINGS                          5

1
2    that you may have what seems like the one-off situation
3    and that your theory of making this a class action and
4    getting the discovery you're seeking is based on an
5    entirely speculative theory for which there's no basis
6    at this point.
7              MR. WILSON:  Yes.  Your Honor, My co-counsel
8    has, we have recordings of calls to other individuals,
9    and they are clearly telling them that they're going to
10    call back, they're going to get a call back and that
11    they have been, that they need to say that they were
12    visited by an individual and walking them through that
13    process.
14              THE COURT:  Well, look, until there's evidence
15    of that nature that's been provided in discovery, I
16    don't feel I have a basis to say that there's a reason
17    to go into very expansive discovery.  And I have
18    concerns that the requests that are in the subpoena to
19    Baltimore Gas & Electric are very broad and are really
20    nothing more than an attempt to get information so that
21    the plaintiffs can go essentially trolling for people
22    that they think, well, they want to ask have you gotten
23    these calls.  And that's sort of just a fishing
24    expedition.  Do I have it wrong?
25              MR. WILSON:  Yeah, I do so, Your Honor,

```
 1                           PROCEEDINGS                    6

 2   respectfully.  One --

 3             THE COURT:  Okay.

 4             MR. WILSON:  One, we don't have any, look,

 5   we're not trying to get other claims.  I mean we feel

 6   confident we have a claim on behalf of Nock here, but we

 7   do purport to represent a class.  And we've got 90 days

 8   left in our discovery period, and obviously one of the

 9   things we're going to have to show is numerosity, we're

10   going to have to show that there are other individuals

11   who received these calls.  It's not a fishing

12   expedition.

13             We do have indications that these calls were

14   made to other individuals, and we need to know, frankly,

15   that the motion direct reason that we need this

16   information is that the defendants have been kind of

17   playing keep away somewhat in our informal requests and

18   send us information through affidavits about their

19   telemarketing calls, but they won't produce any of the

20   documents.  They've got discovery coming up soon, and

21   we'll see what they actually produce, but they've been

22   unwilling today to give us any documents. They just

23   purport to say we've looked at these, this number's not

24   in here, trust us.  We've to gotten anything from their

25   door-to-door marketing or any documents to look at.  So
```

PROCEEDINGS                                7

1

2  we don't have a lot of time.

3          So what we need is some information from a

4  third party that will show us the scope of people who

5  signed up during this one-month period.  We're not

6  talking about a long period of time.  We're talking

7  about April of 2021.  And, also, to the extent the

8  defendants are going to contend that, you know, that

9  they didn't know about this or disavow this in some way,

10  they ratified and took the benefits of these

11  transactions by signing individuals up.  So we think

12  there's going to be crucial information that's going to

13  come over from BG&E that will show that.

14          Now, Your Honor, this is not a situation where

15  BG&E, they're not here objecting, they're not claiming

16  that this is burdensome, they're not claiming that

17  there's any interest in this here.  The defendants are

18  very much trying to shift the burden to us to show that

19  it's relevant when they as the resisting party have the

20  burden of coming forward and showing you that this is,

21  you know, somehow confidential or sensitive or is going

22  to be harmful to them.  We're not competitors of them,

23  and, frankly, you know, I mean Mr. Nock was someone they

24  solicited to do business with them.

25          So there's really no showing or description on

1

2 the defendants' part of why this should be problematic.

3 And so they just say, well, it's not relevant or they

4 have this concern that we're going to reach out and try

5 to do something improper in terms of soliciting these

6 individuals.  And, frankly, Your Honor, we cited a case,

7 <u>Gulf Oil</u>, the U.S. Supreme Court looked at this back in

8 1981 and said, look, it's not improper to contact

9 witnesses and try to find out, you know, to track this

10 down and try to find out what happened and whether they

11 had a similar experience and whether there's evidence

12 here that would support a class certification issue.

13 And we think it is entirely appropriate for us to try to

14 do that.  We need to show numerosity.  We need to show,

15 like I said, there are a number of these others here.

16         So the defendants have wanted this blanket

17 prohibition, don't contact them, don't speak to them.

18 Well, that's frankly a, you know, I couldn't agree to

19 that ethically, Your Honor, and purport to represent

20 this class to say I will not contact any class members.

21 It's not for the purpose of getting additional claims

22 though, as the defendants --

23         THE COURT:  Here's the problem --

24         (interposing)

25         THE COURT:  Here's the problem though.  You are

PROCEEDINGS                          9

1

2 right in the theoretical realm of contacting class

3 members, although there are limits that are put on that

4 until, and can be put on that, unless and until a class

5 is certified.  But that aside, which is an important

6 point, is this is different from a case where you know

7 there's this universe of people that exist.  There were

8 these employees in a wage and hour case who were subject

9 to the same policy during X time and you get a list of

10 employees.  There were people in these three positions

11 within this company across X divisions, and they may

12 have claims of discrimination.

13          This is one guy says I got a call and there's

14 speculation that others may have as well.  I understand

15 you're saying you have recordings, although I'm assuming

16 that that hasn't been produced in discovery yet.

17          But, again, I just see this as way overbroad,

18 and one question I would ask, you said Baltimore G&E

19 hasn't weighed in.  Well, when were they served?

20          MR. WILSON:  I believe the process server for

21 whatever reason was late getting them served.  They were

22 served on July 3.  They have – opposing counsel has sent

23 them communications.  I understand he spoke with a

24 representative of them on Tuesday, sent an email

25 following up.  My co-counsel in this case also spoke

```
 1                          PROCEEDINGS                    10
 2  with them I'm not sure exactly when but before defense
 3  counsel spoke with them, late, today's Thursday, either
 4  earlier this week or late last week.  And my
 5  understanding of that conversation was they indicated
 6  they're planning to produce documents (indiscernible)
 7  from the Court, defense counsel, Mr. Hallak, sent an
 8  email to them yesterday, to them Tuesday saying what any
 9  lawyer should know which is, if you guys have any
10  objections, you should get them on file and serve them.
11  So we've not seen any objection from them, and we've
12  not, they didn't indicate in their phone call with my
13  co-counsel that they were planning to object.
14          Like I said, I didn't think this case - sorry,
15  Your Honor.
16          THE COURT:  No, no, no, you go ahead.
17          MR. WILSON:  Typically, you know, if there's
18  some protectible interest that the defendants have, they
19  should be telling you what that is.  And I get Your
20  Honor's concern that you think this is perhaps overly
21  broad, but with all due respect the burden is kind of
22  being shifted to us, go justify this, go show why this
23  is relevant, and we've outlined why we think it is, and
24  the defendants have really put forward nothing other
25  than these baseless accusations that we're going to
```

1                          PROCEEDINGS                        11

2  somehow misuse this information, and there's just not

3  record to support that.  I certainly don't have any

4  intention of doing anything inappropriate, Your Honor,

5  and I just can't agree in the protective order to say we

6  will not contact any person who, you know, appears to

7  have information that might be helpful in this case, you

8  know, without – I can't tie my hands like that.  It

9  wouldn't be fulfilling my obligations to my client and

10 to the potential class we purport to represent to say

11 that we would not contact those individuals.

12         I don't know that we need to.  I mean I'm not

13 saying we will; I'm just saying I can't in a vacuum

14 commit to a protective order that we won't do that.

15 That's not – I can't tell you that's not the aim of the

16 subpoena.  The subpoena's to really get at what are the

17 other sources of ways that individuals are signed up,

18 who are the other vendors, and given that we're looking

19 at a month, I mean Your Honor is I guess supposing that

20 this is extremely overly broad, but we don't even have

21 any information from the defendants as to how many

22 people this might be.  This might be 30 people.  This

23 might, I don't know.

24         You know, they've not really give us anything

25 to indicate why this is burdensome or why it's overbroad

```
 1                          PROCEEDINGS                    12
 2  or --
 3            THE COURT:  Okay, all right, let me just ask a
 4  few more questions, and I will give Mr. Hallak an
 5  opportunity to speak obviously.  Is it, is there a
 6  reason - do you believe or is it do you have an
 7  understanding factually that Baltimore G&E has
 8  information about how the people were enrolled?  In
 9  other words, would Baltimore G&E have information that
10  someone enrolled by way of having received a
11  telemarketing call?
12            MR. WILSON:  I don't know is the answer to that
13  question, Your Honor.  I don't know - the subpoena was
14  written in such a way so that whatever documents they
15  might have related to that would come within the scope
16  of the subpoena, our primary - hopefully that would be
17  very useful if they do.  Our intent in issuing it was to
18  find that out, but primarily what we do think they will
19  have is the list of the individuals, and we expect to go
20  back to the defendants and say, you know, look, for each
21  of these individuals how were they, what methods were
22  used to sign them up, what vendors were used to sign
23  them up.
24            Because grant it, you know, you mentioned
25  exchange of information in discovery, our first
```

PROCEEDINGS                        13

1
2   responses to discovery the defendants have sent us is
3   due here in a couple of weeks.  Their first set is due,
4   you know, just now.  We ended up using a fair amount of
5   early time hoping to exchange information informally.
6   We provided some information to defense counsel.  As I
7   indicated, we got some affidavits that just said, hey,
8   trust us, we've looked at these documents, it's not in
9   this.  Obviously, we told them we need to see those
10  documents ourselves to look at that if we're going to
11  get anywhere on this, and that's kind of where things
12  broken down.
13          THE COURT:  And just an aside on that,
14  obviously things like that become thorny when you're
15  trying to prove a negative.  If it's something where
16  you're going to find actual targets, then it's easier to
17  say, okay, we can look at it and verify.  But to ask to
18  prove a negative is not necessarily as easy, but that's
19  not to say there may not be some way to do it.
20          MR. WILSON:  Your Honor, if I could briefly --
21          THE COURT:  Yeah, go ahead.
22          MR. WILSON:  -- just comment on that point.
23  Yeah, I mean I understand they're saying, well, we can't
24  prove what's not in here.  Well, one way you can is you
25  show us the records that you have at least for, you

1

2    know, certain time periods and we look at those, and

3    we're at every turn faced with, oh, well, we can't show

4    you these, you know, you're going to drum up some claim.

5    Now, we didn't do anything wrong, but we can't show you

6    this because you might manufacture a claim or you might

7    show – well, Your Honor, frankly, if it's not relevant

8    and there's nothing there, we can't do anything with it

9    and nobody's harmed.  If it is relevant though and there

10   is information there, I mean discovery's meant to be

11   broad.  We're supposed to have the ability to pursue

12   these claims, and, frankly, defense counsel is, you

13   know, just keeps pounding the table that, oh, they don't

14   have a claim, they don't have a claim, they don't have a

15   claim.

16          And we've cited a lot of case law that says

17   that, you know, just because defendant, you know, we're

18   in a situation where the defendant says, hey, I didn't

19   do it doesn't mean we don't get discovery on it, Your

20   Honor, and so --

21          THE COURT:  That's true.  That's true, and, for

22   instance, you would get, you'd be able to take

23   depositions of everyone who gave those affidavits

24   presumably.  And if they looked through documentation to

25   verify something, presumably you'd be entitled to

```
 1                        PROCEEDINGS                    15
 2  discovery of either summary information about that or
 3  whatever they looked at conceivably.  So surely there's
 4  going to be discovery of that type.  But here we're
 5  already going to a third party, and I understand your
 6  point, you served a subpoena because you are getting
 7  roadblocks from the defendant in terms of getting
 8  material from them given their position on the
 9  protective order.  All right, well, let me hear from Mr.
10  Hallak.
11           MR. HALLAK:  Okay, thank you, Your Honor.  I
12  want to start if I may with one of the things that just
13  came up about Baltimore Gas & Electric and their
14  response.  I spoke with one of their inhouse counsel for
15  the parent company, and I was told on Tuesday that they
16  were told by plaintiff's counsel that they don't need to
17  respond until after this hearing.  So if there's an
18  issue about them not responding, it's because they were
19  told by the plaintiff's counsel that a response was not
20  necessary.  That's what I was told on Tuesday.
21           One of the things that I do want to point out
22  which is very important is there are actually statutory
23  prohibitions to a utility in Maryland disclosing
24  customer information to a non-party without the
25  consumer's informed consent.  So that is something that
```

```
 1                            PROCEEDINGS                    16

 2   certainly the utility should be raising.  It's something

 3   we can raise.  But I think it's very unfair for

 4   plaintiff to say that they're not here and they're not

 5   objecting when I was told this week that they were

 6   specifically advised by the plaintiff that it was not

 7   necessary for them to do so until after this hearing.

 8            To move forward just to address some of the

 9   point raised, I think you hit the nail right on the head

10   at the outset here.  Here's the concern we have.  We got

11   this complaint.  The complaint alleges, it doesn't talk

12   about door-to-door, it doesn't talk about somebody

13   receiving calls and saying, this is the first time I'm

14   hearing this today what the plaintiff said about having

15   recordings of other individuals.  I have never heard

16   this before today.

17            The complaint doesn't allege that they received

18   a call and they were told that they had to say it was

19   door to door and that it was a telemarketing call.

20   Instead, what his complaint alleges that he received

21   nuisance telemarketing calls, several of them during

22   April of 2021, that were unsolicited and unauthorized

23   and that he was on a do-not-call registry.  That is what

24   this plaintiff alleges.

25            And we have looked at the complaint.  There
```

1                         PROCEEDINGS                      17

2    were partial numbers in the complaint.  Spring Power &

3    Energy, Power & Gas, they are a alternative to your

4    local utility.  So you have your local utility that

5    provides the energy to customers in a location.  The

6    location where plaintiff lives it's Baltimore Gas &

7    Electric is the local utility.  Consumers can receive

8    their energy supplies from the local utility, or they

9    can go out into the marketplace, and they can select a

10   private entity, and there are many of them out there, to

11   be their energy supplier.

12          So Spring Power & Gas is one of those

13   alternatives.  They provide an environmentally conscious

14   product.  A lot of consumers like that.  They obtain

15   their customers through many sources – direct, in-

16   person, marketing, internet sales, social media – a

17   very, very, very small percentage of their enrollments

18   are through telemarketing.

19          Now, the people that have enrolled with Spring

20   Energy, and we actually confirmed, that during this

21   monthly, during this period that plaintiff claims he

22   received these calls, and, again, you know, he's asking

23   for information about consumers that enroll with

24   companies which is very distinct from, hey, I received a

25   nuisance phone call that I didn't agree to receive.  We

1                          PROCEEDINGS                    18

2    actually confirmed that during this time period and in

3    this location where Baltimore Gas & Electric is the

4    local utility servicing, there was not a single person

5    during that time period that came to that enrolled with

6    Spring Power & Gas through telemarketing efforts.  They

7    all came through other efforts.  So, again, like what

8    you had said, I think you were exactly right when you

9    were saying, yeah, they're trolling because if you have

10   a plaintiff who is claiming I received telemarketing

11   sales calls unsolicited, unauthorized that I didn't

12   agree to, in what world would existing customers

13   enrolled through other means have any relevance to the

14   case that we have at hand here.  It seems pretty clear

15   to us, and we ran this down, and the suggestion that

16   we've tried to hide the ball is absurd.

17           We got this information, we told the

18   plaintiffs, look, you've sued the wrong entities.  You

19   know, the way that the telemarketing had worked, they

20   had contracted a vendor.  They did not make cold calls.

21   They had --

22           THE COURT:  Look, look, can I just cut you off

23   for a minute?  You're getting into a lot of the merits.

24   I want to focus on the discovery aspect of it, and I

25   understand your point of view on the merits.  But,

1 PROCEEDINGS                    19

2 again, it sort of to me it comes down to what is the

3 allegation as to how he was contacted, and if the

4 allegation or the idea is that he was contacted by

5 someone who is otherwise supposed to do it by door to

6 door, there may be discovery relevant to that.  But it

7 should be focused on that.  It shouldn't be all forms of

8 contact, shouldn't be everyone who signed up.  It may be

9 it should be everyone who was assigned to be visited

10 door to door, for instance.  I don't know whether you

11 have information parsed out like that or not.

12        MR. HALLAK:  Well, Your Honor, we as Spring

13 Energy have that information.  What obviously – and in a

14 door-to-door situation it's different from what

15 plaintiff is alleging.  What plaintiff is alleging and

16 his claim is he's not saying that somebody came to him

17 door to door.  He's saying --

18        THE COURT:  I know, I know, he's saying – but

19 my understanding, again, is that there is that during

20 COVID going door to door might be a problem, and so

21 employees who had that responsibility or agents or

22 whoever say, well, I can't go that way, so I might as

23 well try calling.  I mean it's a theory.  It's not

24 outlandish to think that could've happened.  And so I'm

25 just, again, but that's, we need to focus on information

1

2  that's limited in that way.

3        Look, I think what needs to happen here is the

4  discovery in the first instance needs to come from

5  Spring, but we're not going to defer that any further

6  simply because of this disagreement about the protective

7  order.  And if there's a narrower scope of the

8  information that's being produced that focuses on the

9  type of misconduct that's alleged, so anyone who did

10 door to door that month, let's say, then I don't think

11 the protective order should have a restriction on

12 contacting folks that – that itself is unusual.  There

13 are situations in class actions obviously where limits

14 are placed by a separate order on what can be done with

15 respect to calling potential class members.

16       Again, here we have a very amorphous situation

17 where, you know, it's not as if, maybe discovery would

18 show otherwise, but I haven't heard otherwise.  It seems

19 doubtful that there was a policy of saying, okay, all

20 you door-to-door people call because you can't go door

21 to door.  Obviously, if there were information like

22 that, that should be produced, but that would at least

23 provide a universe of class members, potential class

24 members.

25       MR. HALLAK:  Your Honor, maybe I could help

1                            PROCEEDINGS                    21

2   provide some helpful information to everybody here about

3   that just so that we understand the distinction between

4   the two.  They were, in fact, doing actual physical

5   door-to-door marketing in April of 2021.  The way the

6   door-to-door marketing work is if they knocked on

7   somebody's door and somebody had consented to switch

8   their enrollment from either the local utility or

9   another energy supplier that they were using to Spring,

10  those individuals filled out paperwork while the sales

11  agent was there, and then there's what we call a third-

12  party verification process where they would receive a

13  call from somebody confirming that they had actually

14  agreed to switch their enrollment.

15          THE COURT:  But, again, that's based on an

16  initial consent, and, again, the theory here is that no

17  such consent was provided.

18          Another question about information, the scope

19  of the information that you might have, does Spring have

20  – for the door-to-door folks, and telemarketing folks,

21  but for door to door folks at the very least, is there

22  information indicating which specific sales agent

23  would've been visiting customers in Mr. Nock's area in

24  April of '21.

25          MR. HALLAK:  We should have all that

1                         PROCEEDINGS                    22

2  information, but, again, and I think you pointed out,

3  any call that would be made following a door-to-door

4  sale, once somebody has actually consented to receive

5  has an established business relationship --

6            THE COURT:  That's – (indiscernible) that's

7  what you say, the allegation might be or what may have

8  happened is that that may have been not on that policy.

9  That's, you know, the plaintiff's, again, who knows,

10 maybe.  But that gives us a much narrower scope of

11 information than what otherwise is at least indicated to

12 me being sought through the Baltimore Gas & Electric

13 Company.  So I don't know what the scope is that you

14 already have issued and discussed as what will be

15 produced from Spring, but I think in the first instance

16 this information has to come from Spring, that you need

17 to go forward with production.  If you're objecting

18 based on scope, produce at least what you're not

19 objecting to.  Then we'll resolve whatever disputes you

20 have about scope.

21            But I think it's improper to – this subpoena to

22 me is improper.  For instance, number 8, communications

23 between BG&E and any person who submitted – any person

24 who has submitted any kind of complaint concerning

25 Spring Power during the class period.  I mean that's

```
 1                              PROCEEDINGS                    23
```

 2   just outrageous, quite frankly.  And so that and others,

 3   it just shows me that this is not a well-tailored

 4   subpoena, and it's also a third-party subpoena where

 5   information can be had from the defendant and needs to

 6   be had from the defendant.

 7          If time becomes a problem in a crunch and we

 8   need an extension, then I'm sure you can apply for an

 9   extension.  Right now I don't have it for general

10   pretrial purposes.  I don't know if Judge Rearden will

11   do that.  But it certainly seems to me if there's been a

12   problem getting documents because of balking based on a

13   protective order, there may be a need for an extension.

14          But in any event, so my rule is that subpoena

15   is quashed without prejudice to a future subpoena,

16   right, in case there really becomes a problem with

17   defendant not getting information or you can show that

18   there is information that Baltimore would have that

19   Spring doesn't have and if it were then to be more

20   tailored.  So I'm denying, I'm quashing this one but

21   without prejudice to a future one.

22          And I'm going to order that the discovery

23   order, protective order be entered without a restriction

24   on contacting.  If there needs to be a restriction on

25   contacting, that can be dealt with through a separate

```
 1                        PROCEEDINGS                    24
 2  application or order, but, again, to me that will come
 3  back to sort of the scope.  There will be some universe
 4  where it would be appropriate to make those calls.  All
 5  right?  Any more things we need to discuss on that front
 6  or any other front?  Mr. Wilson.
 7           MR. WILSON:  I don't think so, Your Honor.  I n
 8  your ruling and disappointed but respect it.
 9           THE COURT:  Okay.  And Mr. Hallak, anything
10  from you?
11           MR. HALLAK:   Not at this time.  We'll submit
12  that protective order with Your Honor's ruling to the
13  court for entry.  We understand it.
14           THE COURT:  Okay.  And I'll issue a short order
15  just summing up today.  All right?  Thank you both, be
16  well.
17           MR. HALLAK:  Thank you for your time.
18           MR. WILSON:  Thank you, Your Honor.
19           (Whereupon, the matter is adjourned.)
20
21
22
23
24
25
```

1                                                                          25

2

3                      C E R T I F I C A T E

4

5           I, Carole Ludwig, certify that the foregoing

6    transcript of proceedings in the case of NOCK v. SPRING

7    ENERGY, et al, Docket #23cv1042, was prepared using

8    digital transcription software and is a true and

9    accurate record of the proceedings.

10

11

12

13   Signature_____
                        *Carole Ludwig*

14                      Carole Ludwig

15   Date:    July 28, 2023

16

17

18

19

20

21

22

23

24

25